UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

JAMES LEE SIMPSON,   Case No.: 13-40125-KKS
   Chapter 12
   Debtor,
_____/

**OBJECTION OF CREDITORS,
TERRY TAYLOR AND MARIE TAYLOR, TO DEBTOR'S CHAPTER 12
PLAN [Doc. No. 17] WITH INCORPORATED MEMORANDUM OF LAW**

Creditors, TERRY TAYLOR and MARIE TAYLOR, hereinafter the "Taylors", by and through their undersigned counsel and pursuant to 11 U.S.C. § 1222(b)(3) and (5), 11 U.S.C. § 1225(a)(3) and (6), Fed. R. Bankr. P. 3015(f), and N.D. Fla. LBR 2015-1(F) and (G) and 2082-1, file this objection to the Chapter 12 Plan ("Plan") [Doc. No. 17] of the Debtor, JAMES LEE SIMPSON ("Debtor"). As grounds therefor, the Taylors state the following:

### Introduction

1. To be confirmed, a Chapter 12 Plan must (1) be proposed in good faith and (2) the debtor must be able to make all payments under the plan and comply with its terms. 11 U.S.C. § 1225(a)(3) and (6). The Plan proposed by the Debtor fails to satisfy these two basic requirements.

2. On July 27, 2012, the Taylors filed a complaint for foreclosure against the Debtor in *Terry Taylor and Marie Taylor vs. James L. Simpson and John T. Bell*, Case No. 2012-CA-00594 (Eleventh Judicial Circuit in and for Gadsden County, Florida), and on March 5, 2013, the Debtor initiated this Chapter 12 bankruptcy proceeding before this Court effectively staying the foreclosure proceeding.

3. On June 11, 2013, Debtor filed a Chapter 12 Plan [Doc. No. 17] which is currently set for confirmation hearing before the Court on November 18, 2013.

A. **Debtor's Chapter 12 Petition and Plan were Filed in Bad Faith**

4. Section 1225(a)(3) provides that the Court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1225(a)(3). Good faith is not defined in the Bankruptcy Code. Instead, courts generally evaluate all of the factors present in a specific case to determine whether the good faith requirement is satisfied. In re Sorrell, 286 B.R. 798, 805 (Bankr.D.Utah 2002). A debtor's good faith is determined by examining "the totality of the circumstances" in the case. In re Carter, 165 B.R. 518, 523 (Bankr. M.D. Fla. 1994) (citing In re Kitchens, 702 F.2d 885 (11th Cir. 1983)).

> "In essence, the good faith requirement is a catch-all provision that allows the court to take an overall look at the use which the debtor has made of the chapter 12 filing. If the court determines that the debtor filed the case or filed the plan for a purpose other than a good faith attempt to reorganize the debtor's farming business, the court is empowered by § 1225(a)(3) to deny confirmation."

In re Lockard, 234 B.R. 484, 490 (Bankr.W.D.Mo.1999) (quoting 8 Collier on Bankruptcy 1225.02[3], p. 1225–7 (15th ed. rev.1999)).

5. Because good faith is not defined in the Code, a court's determination of good faith is a fact intensive analysis and adjudged on a case-by-case basis in light of the surrounding circumstances. In re Buis, 337 B.R. 243, 250 (Bankr. N.D. Fla. 2006) ("The Bankruptcy Code imposes the requirement of good faith upon a debtor both at the time of the filing of the petition and at the time of the filing of the plan.")[1]

6. Based upon the information contained in Schedule I – Current Income of Individual Debtor(s) [Doc. No. 1], and Schedule J – Current Expenditures of Individual

---

[1] "Chapter 12 is patterned after Chapter 13, rendering Chapter 13 cases relevant to [the] interpretation of Chapter 12." In re Holloway, 261 B.R. 490, 492 (Bankr. M.D. Ala. 2001) (quoting Justice v. Valley Nat'l Bank, 849 F.2d 1078, 1083 (8th Cir. 1988)).

2

Debtor(s) [Doc. No. 1], the Debtor does not have the projected income to fund the Plan filed on June 11, 2013, as his net disposable income indicated by Schedule I (i.e., $4,000.00), after the payment of expenses listed in Schedule J, results in monthly net income of only $1,110.00, or approximately $13,000.00 annually, while the Plan provides for payments to the Taylors in the amount $18,000.00 annually. As can be seen from the Monthly Cash Receipts and Disbursement Statements filed herein by the Debtor [Doc. Nos. 24, 59, 60, 61, 62, 63], the Debtor has not realized any income from either Watt Mizer Electrical or from the sod business (projected in Schedule I in the combined amount of $3,000.00 per month), but rather has only realized income from Social Security payments in the amount of $1,000.00 per month, which, after payment of the expenses listed in Schedule J, results in negative income on a monthly basis.

7. The Debtor's stated income in Schedule I does not correspond with his Federal income tax returns for the three (3) years prior to the petition date which reflect farm income dramatically less than that which was proposed in the Plan, (i.e., $14,599.00 in 2012; no farm income whatsoever in 2011; and negative farm income of $4,837.00 in 2010).

8. Essentially, when this Chapter 12 petition was filed, the Debtor was fully aware, based upon his prior income, that his current and projected income listed in Schedule I was unachievable, and therefore presented to the Court in bad faith.

9. Furthermore, since filing his petition, Debtor has repeatedly ignored this Court's deadlines and reporting requirements by: (1) failing to file a plan within 90 days pursuant to 11 U.S.C. § 1221 [Doc. No. 16]; (2) completely failing to file Monthly Cash Receipts & Disbursement Statements for March and April, 2013, and not filing until October 29, 2013, the June, July, August and September Monthly Cash Receipts and Disbursement Statements as required by N.D. Fla. LBR 2081.1(A)(3); and (3) failing to timely file a briefing as requested by

this Court at the September 19, 2013 evidentiary hearing on Debtor's Motion to Determine Validity of Lien of Creditor, John T. Bell [Doc. No. 47], said briefing to have been filed by October 9, 2013 (and evenutally filed on October 25, 2013 [Doc. No. 52]). Pursuant to N.D. Fla. LBR 2015-1(F) and (G), Debtor's failure to file its Monthly Cash Receipts & Disbursement Statements alone provides a sufficient basis for dismissal of this Chapter 12 bankruptcy proceeding.

10. Additionally, Debtor has not complied with N.D. Fla. LBR 2082-1(B)(3) which requires, in all Chapter 12 cases, that a pre-confirmation statement shall be filed upon the filing of a plan, with copies of said statement being served on all creditors, the trustee, the U.S. Trustee, and other persons who have requested notice pursuant to N.D. Fla. LBR 2002. This pre-confirmation statement was not filed upon the filing of a plan, nor has it been filed since then, with the confirmation hearing scheduled for November 18, 2013.

**B.     Debtor is Not Eligible for Chapter 12 Relief**

11. In order to be eligible for Chapter 12, a debtor must be "a family farmer or family fisherman with regular annual income," 11 U.S.C. § 109(f), which is defined as a family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a Chapter 12 plan. 11 U.S.C. § 101(19). This imposes a burden on the debtor to present the court with a factual basis to find that the debtor will have sufficient income in amount and stability to make payments under and complete a confirmable plan.

12. Debtor has not provided any such factual basis. In fact, Debtor has indirectly conceded that his income will not be sufficient to make payments under and complete a plan by representing that he has received no income aside from Social Security payments in each of his Monthly Cash Receipts & Disbursement Statements (Doc. 24, 59, 60, 61, 62) and that he has no

employment income (Doc. 4). Therefore, Debtor does not have "sufficiently stable and regular" annual income to meet the eligibility requirements under Chapter 12.

### B.   Debtor's Chapter 12 Plan is Not Feasible

13.   For the same reasons the Debtor is not eligible for Chapter 12 relief, the Plan proposed by the Debtor fails to satisfy the feasibility requirement of 11 U.S.C. § 1225(a)(6). "Section 1225(a)(6) of the Bankruptcy Code provides that the Court shall confirm a plan if 'the debtor will be able to make all payments under the plan and to comply with the plan.' 11 U.S.C. § 1225(a)(6). This requirement, dubbed the 'feasibility test,' focuses on the probability of the debtor's making all payments under the plan." In re Hand, 2010 WL 745624 at *6 (Bankr. M.D. Fla 2010) (citations omitted). The feasibility test requires that the debtor establish a "reasonable probability of success." Id.; see also In re Kollar, 357 B.R. 657, 660 (Bankr. M.D. Fla. 2006) ("[The Debtor] has no ability to fund a realistic plan of reorganization. The Plan was not proposed in good faith and is not feasible. The Debtor has no disposable income . . . . The Debtor has no ability to present a confirmable plan.").

14.   There is absolutely no information or documentation, and certainly not "adequate information", about:  (a) the Debtor's ability to make all of the payments under the Plan and to comply with the Plan, (b) the financial condition of the Debtor, including assets and liabilities of the Debtor as well as the income and expenses of the Debtor for the preceding calendar year, (c) the value of any property of the estate, whether being retained by the Debtor or surrendered, which is subject to a lien or security interest as well as a description of the basis for such value, (d) an analysis of the amount which would be received by unsecured creditors if the estate of the Debtor were to be liquidated under Chapter 7 of Title 11, and (e) a projection of the net disposable income of the Debtor for the term of the Plan as required by N. D. Fla. LBR 2082-

1(B)(1). The Monthly Cash Receipts and Disbursement Statements for the months of May, June, July, August, September and October[Doc. Nos. 24, 59, 60, 61, 62, 63] reflect that Social Security payments were the only income realized by the Debtor during that period of time, resulting in net income on a monthly basis grossly insufficient to pay the Debtor's expenses listed in his Schedule J [Doc. No. 1], much less the amount due to the Taylors and other creditors pursuant to the Plan.

15. In addition to the sparse, but telling, financial information provided by the Debtor since the filing of the petition in this case, the Federal income tax returns for the years 2010, 2011 and 2012 clearly indicate that the Debtor had received little, if any, income from his sod business during the three (3) year period prior to the petition in this case. The Debtor has also admitted in his Response to Motion of Terry and Marie Taylor to Dismiss his Case with Prejudice [Doc. No. 65, p. 2, para. 6] that the Debtor has not realized _any_ farm income since the filing of this Chapter 12 bankruptcy proceeding on March 5, 2013, a period of more than eight (8) months.

16. Although the Debtor has not provided either this Court or creditors with projected income to support his ability to make payments pursuant to his Plan, it is not difficult to project from the Debtor's Federal income tax returns for the three (3) years prior to the petition, as well as from the Debtor's Monthly Cash Receipts and Disbursements Statements filed subsequent to his petition, that the Debtor did not have prior to the petition, has not had since the filing of the petition, and will not have in the future, sufficient income to make all payments under the Plan and to comply with the Plan as required by 11 U.S.C. § 1225(a)(6).

D. **Specific Objections to Debtor's Chapter 12 Plan**

17. In the event this case is not dismissed for a bad faith filing, or the Plan is not confirmed as not having been proposed in good faith or is not confirmed because the Debtor is found not to be able to make all payments under the Plan and to comply with the Plan:

   a. The Taylors object to the Plan in that it does not provide for the payment of the arrearage due to them in the amount of $68,355.62 [Claim No. 3].

   b. The Taylors object to the Plan in that it does not provide for the payment of the timely filed claim of the Internal Revenue Service in the amount of $21,876.44 [Claim No. 2].

   c. The Taylors object to the provisions in paragraph 2 of the Plan in that it purports to extend the amortization period of the Taylors' claim over fifteen (15) years, with post-petition interest at the rate of 4% per annum, and with payments being made on an annual basis. The Plan confirmed in the Debtor's earlier Chapter 12 bankruptcy proceeding (*In re: James Lee Simpson and Geralean Harvard Simpson*, Case No. 02-71381-LMK, United States Bankruptcy Court for the Northern District of Florida) converted the monthly payments being made prior to the confirmation of that Plan to annual payments, two of which were not made prior to the filing of this bankruptcy proceeding, and a third of which was not made during the pendency of this case. To provide for annual payments again in a confirmed Chapter 12 plan would allow this Debtor, who did not file this case in good faith, to avoid payments to the Taylors for more than four (4) years without having demonstrated any ability to make an annual, or any other, payment as contemplated by his Plan. Payments to the Taylors in any confirmed plan should be on a monthly basis.

   d. The Taylors further object to the provisions in paragraph 2 of the Plan that propose to reduce the interest rate on the mortgage held by the Taylors to 4%, resulting in an

7

insufficient rate under the Supreme Court's ruling in Till v. SCS Credit Corp., 541 U.S. 465 (2004). In *Till*, the Court adopted the formula approach as the appropriate method for calculating the adequate rate of interest in bankruptcy. This approach applies the "prime-plus" formula utilizing the current prime rate as its basis and allowing for upward adjustment from 1% - 3% depending on the current state of the financial markets, circumstances of the bankruptcy estate, and characteristics of the loan. The current prime rate is 3.25%. Under the current economic climate and the aforementioned high risk of nonpayment, the Taylors are entitled to the full 3 percentage points above prime, or 6.25% interest.

  e. The Taylors object to the provisions in paragraph 4 of the Plan in that it specifically provides that the claim of John Bell is disputed and will receive no payment under the Plan, while the status of that claim has not yet been determined by the Court. If the Court rules that the Bell claim is, in fact, a claim secured by a second mortgage on the real estate owned by the Debtor, the Plan cannot possibly be confirmed by this Court due to the dramatically increased amount of the Debtor's secured debt, and the lack of any income to service that debt. There will be similar difficulties if the Court rules that the Bell claim is an unsecured claim.

  f. The Taylors object to paragraph 5 of the Plan which purports to waive or cure defaults not already dealt with. § 1222(b)(3) does state that a plan may "provide for the curing or waiving of default," but these are not simply magic words. A waiver is defined as the "intentional and voluntary relinquishment of a known right or conduct from which waiver can be reasonably inferred." *Matter of Truffles of Sarasota, Inc.*, 30 B.R. 666, 668 (Bankr. M.D. Fla. 1983). It cannot be unilaterally asserted by a debtor, as the waiver must occur through some act

or conduct of the creditor. Similarly, cure of a default contemplates repayment, as evidenced by § 1222(b)(5). Mere forgiveness of a debt without payment is not a cure of such debt.

 g. The Taylors object to the provisions in paragraph 7 of the Plan which purport to grant the Debtor a right to unilaterally modify the plan, in the event he[19] is unable to make all plan payments, to account for the default in new payments and to extend the plan to 5 years. Post-confirmation modification is explicitly governed by § 1229. This type of modification might be allowable, but it must occur "after confirmation," not as part of the original plan. Further, the court must specifically approve any extension of the plan over 3 years under § 1229(c), and the approval may only be "for cause." This finding must be made at the proper time, not prospectively.

 h. The Taylors object to the provisions in paragraph 10 of the Plan in which the Debtor has devised a convoluted scheme by which a creditor has to provide the Debtor with two (2) written notices of a default in payment, while the Debtor can enjoy an additional sixty (60) days to make a payment under the confirmed Plan. The Debtor should have no more than ten (10) days after service of notice of default to both the Debtor and his counsel within which to make the payments under the confirmed Plan.

 i. The Taylors object to the provisions contained in paragraph 12(c) of the Plan with regard to the Debtor obtaining credit during the duration of the Plan without any further notice, hearing, or order of this Court, and without notice to the Taylors, as well as other secured creditors, if any. The Taylors also object to the balance of the provisions in paragraph 12(c) and (d) of the Plan.

WHEREFORE, for the reasons stated herein, the Creditors, Terry Taylor and Marie Taylor, hereby respectfully request that the Plan [Doc. No. 17] previously filed herein by the

9

Debtor, James Lee Simpson, not be confirmed as it was not proposed in good faith and is not feasible.

RESPECTFULLY SUBMITTED this 11th day of November, 2013.

*James M. Donohue*
James M. Donohue of
Florida Bar No. 0191819
jdonohue@ausley.com
Kevin A. Forsthoefel
Florida Bar No.: 92382
kforsthoefel@ausley.com
Ausley & McMullen
123 South Calhoun St. (32301)
Post Office Box 391
Tallahassee, FL 32302
(850) 224-9115
Facsimile: (850) 222-7560

ATTORNEYS FOR TERRY & MARIE TAYLOR

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically via CM/ECF system to Albert C. Penson (acp@pendd.com); Walter W. Kelley (DCannon@kelleylovett.com); Allen Turnage (service@turnagelaw.com); U. S. Trustee (USTPRegion21.TL.ECF@usdoj.gov) on this 11th day of November, 2013, and via 1st Class U. S. Mail to James L. Simpson, 2936 Salem Road, Havana, FL 32333 on the 12th day of November, 2013.

*James M. Donohue*
James M. Donohue

h:\jmd\taylor terry\simpson\pleadings\plan - obj - 2013-11-10.docx