UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

JAMES LEE SIMPSON,                       Case No.: 13-40125
                                                           Chapter 12

         Debtor,
_____/

CREDITORS, TERRY AND MARIE TAYLOR,
MEMORANDUM IN SUPPORT OF DISMISSAL WITH PREJUDICE

       Creditors, Terry and Marie Taylor (hereinafter "the Taylors"), by and through their undersigned counsel and pursuant to this Court's Order, hereby file this Memorandum in support of dismissing the above-caption bankruptcy proceeding of Debtor James Lee Simpson (the "Debtor") with prejudice. In support thereof, the Taylors state as follows:

       1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

       2.      On December 11, 2013, this Court held a continued hearing on Confirmation of the Debtor's Chapter 12 Plan (Doc. 17) and the Taylors' Motion to Dismiss with Prejudice (Doc. 50).

       3.      Prior to the hearing on December 11, 2013, Debtor filed a Notice of Dismissal of Chapter 12 Bankruptcy Case (Doc. 92). Debtor's "Notice" was improper pursuant to Federal Rule of Bankruptcy Procedure 1017(f)(2). At the hearing, Debtor made an *Ore Tenus* Motion to Dismiss (Doc. 96) and subsequently filed a written Motion to Dismiss (Doc. 95).[1]

       4.      During the hearing held December 11, 2013, the Court requested briefings by the Debtor and the Taylors regarding the following issues: (1) the appropriateness of dismissal with

---

[1] Notice and/or motions for voluntary dismissal are not self-executing and must be acted on by the court before the dismissal occurs. United States v. Freeman, 864 F.Supp.2d 1298 (M.D. Fla. 2012); see also In re Letterese, 397 B.R. 507 (Bankr. S.D. Fla. 2008).

1

prejudice of a Chapter 12 proceeding; and (2) the treatment of pending applications for compensation following dismissal of this Chapter 12 proceeding.

5.      On the former issue, the Court provided the parties the following three cases: In re Snider, 99 B.R. 374 (Bankr. S.D. Ohio 1989); In re Pressley, 2013 WL 6050755 (Bankr. D. S.C. 2013); In re Pertuset, 485 B.R. 478 (6th Cir. 2012) (unpublished).[2]

## I.     Dismissal with Prejudice is Appropriate

As a threshold matter, the Taylors challenge the notion that dismissal with prejudice is in any way unusual or unsuitable in a Chapter 12 proceeding.  Congress recognized the necessity of empowering bankruptcy courts with the ability to dismiss Chapter 12 cases with prejudice in drafting 11 U.S.C. §109(g) which states:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if--
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

These statutory grounds for dismissing a Chapter 12 proceeding with prejudice demonstrate the relief being sought by the Taylors is not prohibited simply because the debtor filed for Chapter 12 relief.  Furthermore, courts view the 180-day time period set forth in Section 109(g) as a minimum rather than a maximum. See In re Pertuset, 485 B.R. at *18 ("Taken together, §§109(g) and 349(a) grant a bankruptcy court the authority to prohibit bankruptcy filings for 180 days or

---

[2] Eleventh Circuit Rule 36-2 states that unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.

longer when sufficient cause exists for doing so."); Lerch v. Federal Bank of St. Louis, 94 B.R. 998, 1001 (N.D. Ill. 1989) (affirming dismissal of Chapter 12 proceeding with prejudice for two years citing authority granted in 11 U.S.C. 349(a) – "[w]hen the court has found cause for a dismissal with prejudice, the mandate of Section 109(g) is not applicable—at least to the extent that it merely provides a minimum amount of time before a case may be refiled, not a maximum period of time for which the bankruptcy court may dismiss a case with prejudice when there is a dismissal for cause.")

In addition to the opinions provided to the parties by this Court, the undersigned located numerous opinions from courts across the country ordering the dismissal of a Chapter 12 proceeding with prejudice for reasons including the debtor's serial filings, the debtor's intent to frustrate a non-bankruptcy proceeding, and the debtor's ineligibility for Chapter 12 relief. See, e.g., Lerch, 94 B.R. at 1001 (affirming dismissal of Chapter 12 proceeding with prejudice for two years where debtor's actions "hampered the timely disposition of a bankruptcy action as to preclude the filing of a confirmation order"); In re Bisso, 225 F.3d 661 (9th Cir. 2000) (unpublished) (affirming dismissal of Chapter 12 proceeding with prejudice where debtor had a history of bankruptcy filings and filed his Chapter 12 petition to defeat state court litigation); In re Fuhrman, 118 B.R. 72 (Bankr. E.D. Mich. 1990) (dismissing Chapter 12 proceeding with prejudice following debtor's successive filings); In re Keller, 1996 WL 590877 (E.D. Penn. 1996) (affirming dismissal of Chapter 12 proceeding with prejudice and granting prospective relief from automatic stay where there was no evidence that debtor could possibly be eligible for Chapter 12 relief); In re Massie, 231 B.R. 249 (Bankr. E.D. Va. 1999) (dismissing Chapter 12 proceeding with prejudice for 180 days finding debtor's sole purpose in filing her petition was to frustrate legitimate process of non-bankruptcy forum knowing she did not qualify as Chapter 12

debtor); In re Penz, 121 B.R. 601 (Bankr. E.D. Ok. 1990) (dismissing Chapter 12 proceeding with prejudice where filed to forestall foreclosure sale); In re Timmons, 77 F.3d 483 (6th Cir. 1996) (unpublished) (affirming dismissal of Chapter 12 proceeding with prejudice following failure to confirm plan for lack of feasibility and successive filings); In re Walton, 116 B.R. 536 (Bankr. N.D. Ohio 1990) (dismissing Chapter 12 proceeding with prejudice for two years for successive filings, for lack of any income in previous three years, and for admitting he filed his petition to litigate the issue of ownership of several pieces of property); In re Walton, 95 B.R. 514 (Bankr. S.D. Ohio 1989) (dismissing Chapter 12 proceeding with prejudice after finding debtor intentionally chose an inappropriate venue and was ineligible for Chapter 12 relief).

Furthermore, the undersigned is unaware of any provision in the Bankruptcy Code that instructs the Court to treat a Chapter 12 debtor differently than a debtor under Chapter 11 or Chapter 13 for purposes of a motion to dismiss with prejudice or a determination of bad faith. On the contrary, a number of courts recognize that where the language used by Congress in different bankruptcy chapters is substantially similar, the interpretation of that language in one chapter is helpful in interpreting the same language in another chapter – particularly in assessing bad faith. See, e.g., In re Holloway, 261 B.R. 490 (M.D. Ala. 2001); Traders State Bank of Poplar v. Mann Farms, Inc. (In re Mann Farms, Inc.), 917 F .2d 1210, 1214 (9th Cir.1990) (holding that cases considering the good faith requirement under both Chapters 11 and 13 are instructive and equally relevant in determining whether a petitioner initiated Chapter 12 proceedings in good faith); Justice v. Valley Nat'l Bank, 849 F.2d 1078, 1083 (8th Cir. 1988). ("Chapter 12 is patterned after Chapter 13, rendering Chapter 13 cases relevant to [the] interpretation of Chapter 12"); In re Wickliffe, 106 B.R. 470 (Bankr. W.D. Ky. 1989) (finding good faith is an amorphous concept which is nonetheless tightly woven in fabric of cases under

4

chapters 11, 12 and 13); In re Edwards, 87 B.R. 671, 17 B.C.D. 1029 (Bankr. W.D.Okla. 1988) (discussing that since chapter 12 was modeled after, and is substantially identical in many respects, to chapter 13, decisions under chapter 13 may be looked to in order to predict attitudes of courts to related issues which may arise under chapter 12). In this case, the statutory language in Section 1307(b) of the Bankruptcy Code is identical to the equivalent language under Chapter 12 in Section 1208(b). As a result, case law interpreting Section 1307(b) is relevant to any interpretation of Section 1208(b).

## II.   Debtor's Petition Should be Dismissed With Prejudice

Applying the above-cited case law to the case as bar, Debtor's petition should be dismissed with prejudice for bad faith. In light of the Debtor's testimony at the initial hearing on Confirmation held November 18, 2013, it is apparent that the Debtor had no intention of confirming a plan and filed his bankruptcy petition for the sole purpose of delaying the Taylor's state court action.

A debtor's good faith is determined by examining "the totality of the circumstances" in the case. In re Carter, 165 B.R. 518, 523 (Bankr. M.D. Fla. 1994) (citing In re Kitchens, 702 F.2d 885 (11th Cir. 1983)). In this proceeding, the Debtor failed to provide any evidence that he had, or ever could have, the ability to confirm a Chapter 12 Plan. Taken in their totality, the inconsistencies[3] between the financial information stated in Debtor's schedules, the Debtor's tax returns for the three year prior to filing his petition, the Debtor's Statement of No Employment Income, the Debtor's Monthly Cash Receipt and Disbursement Statements, and the Debtor's testimony at the November 18th hearing, demonstrate that the Debtor did not have "sufficiently

---

[3] The Taylors provided detail of these inconsistencies in their Motion to Dismiss with Prejudice (Doc. 50) and Objection to Confirmation (Doc. 74). For convenience of the Court, the Taylors have not restated those arguments here, but would request that the Court incorporate them fully herein.

stable and regular" annual income to meet the eligibility requirements for Chapter 12 relief, much less the ability to service over $500,000.00 in secured debt.[4] Essentially, when this Chapter 12 petition was filed, the Debtor was fully aware, based upon his prior income, that his current and projected income listed in Schedule I was unachievable, and therefore presented his petition to the Court in bad faith.

In <u>Keller</u>, the district court upheld the bankruptcy court's dismissal with prejudice where the debtor's intent to frustrate a foreclosure action was clear and the debtor was not eligible for chapter 12 relief. The court stated, "we fail to see how the above-captioned petition could possibly have been filed in good faith, as it is abundantly clear that [the debtor] does not qualify as a debtor under chapter 12. While [the debtor] claims to qualify as a chapter 12 family farmer, the testimony of Robert Hyer shows that there was no evidence of any farming activity on the property when he inspected it on May 6, 1996 (5 months prior)" and was otherwise ineligible. In the case at bar, the Debtor has also failed to provide a rational basis for eligibility for Chapter 12 relief. <u>Keller</u>, 1996 WL 590877 at *3. During his testimony, the Debtor was unable to explain to the Court and his creditors a history of sufficiently stable regular annual income or any expectation of stable income in the future. Like the debtor in <u>Keller</u>, Mr. Simpson filed for Chapter 12 relief without any possibility of confirming a plan.

The Taylors also believe the <u>Pertuset</u> and <u>Snider</u> cases cited by the Court are supportive of dismissal of this proceeding with prejudice. Particularly, in <u>Snider</u> the court ultimately denied the creditors request for dismissal with prejudice but noted that it was "admittedly a close call for

---

[4] In order to be eligible for Chapter 12, a debtor must be "a family farmer or family fisherman with regular annual income," 11 U.S.C. § 109(f), which is defined as a family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a Chapter 12 plan. 11 U.S.C. § 101(19).

the Court, due principally to the Debtor's obvious ineligibility to qualify as Chapter 12 debtors." The facts which swayed the court from dismissal with prejudice was the debtor's "sincere intent to reorganize their financial affairs" and the court "could not find that Debtors willfully violated any Court order, abused the bankruptcy process, or sought relief in bad faith such as to warrant a 180-day bar to a future filing. **Moreover, Debtors have assets, an ongoing farming operation, and there is a reasonable probability that a plan will be confirmed.**" In re Snider, 99 B.R. at 378 (emphasis added). Like the debtor in Snider, Mr. Simpson is not eligible for Chapter 12 relief for lack of regular annual income; however, unlike the debtor in Snider, Mr. Simpson has repeatedly ignored the Court's Orders and Local Rules, has not demonstrated an ongoing farming operation, and has never had even a possibility, much less a reasonable probability, that a plan would be confirmed.

At the hearing on December 11th, the Court analogized the "novel issue to be litigated" in Snider to the issue of the validity of John Bell's second mortgage in the case at bar suggesting that the Debtor had a legitimate legal issue that required determination by the Court and, thus, was not acting in bad faith by filing his Chapter 12 petition. However, in light of the financial information provided by the Debtor in his schedules, federal income tax returns, and Monthly Cash Receipts & Disbursement Statements it is evident that the Debtor would not have been able to confirm a Chapter 12 plan for lack of feasibility <u>even if the Court had found Bell's second mortgage was invalid</u>. Along with a number of deficiencies in the Debtor's proposed Plan (Doc. 73, Sec. D), the Debtor did not have the ability to service the Taylors' secured claim in excess of $214,346.00 (Claim 3-1) plus post-petition attorney's fees and interest, as well as the claims of the Internal Revenue Service and Florida Department of Revenue. (Claims 2-1 and 4-1). Finally, resolution of the validity of Bell's second mortgage did not require bankruptcy protection and

7

would have been more properly resolved in state court. For these reasons, the Taylors argue that to the extent "a novel issue to be litigated" even existed, the outcome of that issue would not alter its allegation that the Debtor knew at the time of filing his petition that it was not possible for him to confirm a plan under Section 1225(a)(6) of the Bankruptcy Code due to lack of feasibility.[5]

In the alternative, if the Court does not find that Debtor's conduct rises to the level of bad faith, the Debtor should be dismissed with prejudice for 180-days pursuant to Section 109(g)(1) of the Bankruptcy Code for the Debtor's willful failure to abide by orders of the Court. Throughout this proceeding the Debtor has shown a complete disregard for the Bankruptcy Code, the Orders of this Court, and the Local Rules for the Northern District of Florida Bankruptcy Court.[6] The Debtor's deficiencies include the following:

a. Failing to file a plan within 90 days pursuant to 11 U.S.C. § 1221 (Doc. 16).
b. Failing to ever file Monthly Cash Receipts & Disbursement Statements for March and April 2013, as required by Northern District of Florida Local Bankruptcy Rule 2081.1(A)(3).[7]
c. Failing to file Monthly Cash Receipts & Disbursement Statements for June, July, August and September 2013 as required by Northern District of Florida Local

---

[5] Furthermore, the Court's written Order on the Debtor's Motion for Determination of Validity of Lien (Doc. 26) has not yet been filed; accordingly, this proceeding is not ripe for dismissal. If the Court were to dismiss this proceeding without entry of an Order the parties may be forced to expend additional time and resources re-litigating the same issue in state court or a subsequent bankruptcy filing.

[6] Local rules "have the force and effect of law, and are binding upon the parties and the court which promulgated them" Mid-Continent Casualty Co. v. Basdeo, 2011 WL 2077802 (S.D. Fla. 2011) (citations omitted) and are to be treated as an "order of the court" that governs the case. Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332 (11th Cir. 2001). See also Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923, 924 (11th Cir.1986) ("local rules are valid and binding on the parties").

[7] Pursuant to Northern District of Florida Local Bankruptcy Rule 2015-1(G), Debtor's failure to file its Monthly Cash Receipts & Disbursement Statements alone provides a sufficient basis for dismissal of this Chapter 12 bankruptcy proceeding.

Bankruptcy Rule 2081.1(A)(3) until October 29, 2013, after being prompted by the Taylors' Motion to Dismiss (Doc. 50).

d. Failing to timely file a briefing as requested by this Court at the September 19, 2013, evidentiary hearing on Debtor's Motion to Determine Validity of Lien of Creditor, John T. Bell (Doc. 47), said briefing to have been filed by October 9, 2013, (and eventually filed on October 25, 2013 (Doc. 52) after being prompted by the Taylors' Motion to Dismiss (Doc. 50)).

e. Failing to comply with Northern District of Florida Local Bankruptcy Rule 2082-1(B)(3) which requires, in all Chapter 12 cases, that a pre-confirmation statement be filed upon the filing of a plan, with copies of said statement being served on all creditors, the trustee, the U.S. Trustee, and other persons who have requested notice. This pre-confirmation statement was never filed prior to the confirmation hearing scheduled for November 18, 2013.

f. Failing to file a statement as required by Northern District of Florida Local Bankruptcy Rule 2082-1(B)(1) which contains "adequate information" about: (a) the debtor's ability to make all of the payments under the plan and to comply with the plan, (b) the financial condition of the debtor, including assets and liabilities of the debtor as well as the income and expenses of the debtor for the preceding calendar year, (c) the value of any property of the estate, whether being retained by the debtor or surrendered, which is subject to a lien or security interest as well as a description of the basis for such value, (d) an analysis of the amount which would be received by unsecured creditors if the estate of the debtor were to be liquidated under Chapter 7 of Title 11, and (e) a projection of the net disposable income of the debtor for the term of the plan.

If these items had been filed by the Debtor in a timely manner his creditors would have been aware, well in advance of confirmation, that the Debtor was incapable of confirming a plan. In light of these omissions, the Court would be within its discretion to dismiss this proceeding with prejudice for 180-days pursuant to 11 U.S.C. §109(g)(1). To allow the Debtor to show such

blatant indifference to the Local Rules and Orders of this Court, without consequence, would set a disturbing precedent for debtors, creditors, and their attorneys in the future.

### III. The Court Should Retain Jurisdiction to Determine the Reasonableness of the Taylors' Fees

It is well recognized that bankruptcy courts maintain jurisdiction following dismissal of the underlying bankruptcy case, particularly to determine the propriety of matters concerning compensation. In re Fox, 140 B.R. 761, 762 (Bankr. D. S.D. 1992) (Chapter 12). "While the dismissal of a bankruptcy action indicates discontinuation of the attempt to restructure the debtor's financial affairs under the auspices of a federal court, it does not necessarily moot all issues collateral or ancillary to the bankruptcy proceedings. Dismissal of the underlying bankruptcy proceeding may indicate that no case or controversy remains with respect to issues directly involving the reorganization of the estate, but it does not necessarily indicate that no controversy exists with respect to any collateral or ancillary issues." Dahlquist v. First National Bank in Sioux City, Iowa (In re Dahlquist), 751 F.2d 295, 298 (8th Cir. 1985).

In Fox, debtor's counsel filed an Application for Compensation and Reimbursement under Federal Rule of Bankruptcy Procedure 2016(a) almost 45 days after the Chapter 12 case was dismissed by the court. In the court's dismissal order it stated "[t]he Court retains limited jurisdiction, for the sole and only purpose, of hearing a final application for compensation to be brought by debtor's attorney pursuant to §330(a)." Fox, 140 B.R. at 762. Upon counsel for the debtor filing his application for compensation for services rendered prior to dismissal, the United States Trustee objected based on the timing of the application. The court rejected the Trustee's objection noting that "[t]here are no sections of the Bankruptcy Code that specifically premise the award of professional fees on the existence of an estate at the time the application is filed. No

Code provision moots fee applications filed after a case is dismissed. Timing, as it relates to applications filed after case dismissal, is not one of the Code's elements that controls the approval of professional fees." Id. at 764.

In addition, the court in Fox found additional support for the court's power to reserve jurisdiction for the determination of professional compensation under 11 U.S.C. §349. The court found that by drafting Sections 349(a) and (b) of the Code to read "[u]nless the court, for cause, orders otherwise . . .", the Code reserves to the court "the power to alter the normal effects" of a dismissed bankruptcy case if cause is shown. Id. (citing In re Pocklington, 21 B.R. 199 (Bankr. S.D. Cal. 1982)). In Fox, the court did, in effect, order otherwise by retaining jurisdiction to hear the fee application issues.

In sum, since the Bankruptcy Code does not require a fee application to be filed before a case is dismissed, timing is not a controlling factor when making a determination of fee approval. Therefore, the court can approve fee applications filed pursuant to Bankruptcy Rule 2016(a) even though the underlying bankruptcy case has been dismissed. See also Willis v. Cruise (In the Matter of Samford), 125 B.R. 230 (E.D. Mo. 1991) (affirming bankruptcy court's entry of order dismissing Chapter 12 proceeding and retaining limited jurisdiction to, amongst other things, "Determine the amount of administrative expenses of the Trustee and attorneys") and In re Ethington, 150 B.R. 48 (Bankr. D. Idaho 1993) (holding bankruptcy court retained jurisdiction to decide and determine issues relating to final administration and winding up of property following dismissal of Chapter 12 case).[8]

---

[8] In addition, there are a number Chapter 13 cases which provide further support for the Court's jurisdiction to hear Applications for Compensation following dismissal. Hansler v. Potter (In re Hansler), 203 F.3d 828 (5th Cir. 1999) (unpublished) (holding that the dismissal of a Chapter 13 proceeding does not result in the bankruptcy court losing jurisdiction to consider the allowance of attorney fees to Debtor's counsel); In re Fricker, 131 B.R. 932, 937-38 (E.D. Penn. 1991) ("this court has jurisdiction to determine

As an oversecured creditor, the Taylors are entitled a determination of the reasonable attorney's fees and costs they have incurred and expended during this prolonged 9-month bankruptcy proceeding. 11 U.S.C. § 506(b). On September 19, 2013, the undersigned filed the Taylors' first Application for Compensation (Doc. 46) which was scheduled for a preliminary hearing on November 14, 2013 and rescheduled for November 18, 2013, by the Court in conjunction with the hearing on Confirmation and the Taylors' Motion to Dismiss.[9] On November 5, 2013, the undersigned filed the Taylors' Second Application for Compensation (Doc. 67) which was also scheduled by the Court for a preliminary hearing to be held on December 12, 2013. On December 4, 2013, for the convenience of the Court and all interested parties, the Taylors filed a Motion to Continue and Consolidate the hearings on the Taylors' First and Second Applications for Compensation (Doc. 85) to which the Debtor consented (Doc. 88). On December 6, 2013, the Court granted the Taylors' Consent Motion (Doc. 89) and Ordered the Applications to be heard at a later evidentiary hearing to be noticed by the Court. The evidentiary hearing on the Taylors' First and Second Application for Compensation has yet to be set by the Court.[10] On December 11, 2013, with both Applications for Compensation still pending, the Debtor filed a Motion for Voluntary Dismissal (Doc. 95).

---

the propriety of the compensation received by Counsel even though this [Chapter 13] case has been dismissed . . . It is inconceivable to us that an attorney could avoid subjection to this power of oversight by simply dismissing a case which, in a Chapter 13 case, is a matter of right"); In re Burroughs, 2012 WL 5053054 (Bankr. E.D. Ok. 2012) ("Bankruptcy courts retain jurisdiction to adjudicate certain claims and collateral issues, notwithstanding dismissal or closing of the underlying bankruptcy case. . . . The Court has an independent duty to review and evaluate attorney compensation disclosures and requests, regardless of dismissal.")

[9] The Debtor objected to the Taylors' First Application (Doc. 66) leading the Court to schedule the issue for an evidentiary hearing at a later date.

[10] Following the filing of this Memorandum, the undersigned will file a Third and Final Application for Compensation and request that the hearing on this application be consolidated with the First and Second Application.

In addition to this Court's legal authority to determine the reasonableness of the fees incurred by the Taylors' and their entitlement as an oversecured creditor to have said fees added to the Taylors' secured claim, there are a number of equitable reasons why the Court should retain jurisdiction to rule on the Taylors' Applications for Compensation. First, if the Court refuses to address the reasonableness of the Taylors' fees, the issue will require determination by the state court through the foreclosure proceeding causing a substantial waste of judicial resources. The state court will not have the benefit of having overseen this entire proceeding or the experience and knowledge of bankruptcy procedure required to understand the novelties involved in this proceeding. Further, the attorneys representing the Debtor and the Taylors in state court will not be the same as the attorneys in this case, resulting in unfamiliar attorneys arguing over unfamiliar fees incurred in an unfamiliar court before an unfamiliar judge.

Second, the reason for the Taylors' decision to consolidate and continue the hearings on its First and Second Applications for Compensation, and the forthcoming Third and Final Application, was to allow the Court to make its determination of all compensation at one time. The Debtor, who objected to the Applications for Compensation, consented to their continuance. To now allow the Debtor to avoid his obligation to reimburse the Taylors for the reasonable fees they incurred after filing an unfounded bankruptcy petition that was subsequently dismissed, would be severely unjust.

### IV. Conclusion

The Taylors respectfully request the Court dismiss the Debtor's Chapter 12 proceeding with prejudice to allow the Taylors to proceed with and complete the previously initiated foreclosure proceeding. It is both necessary and appropriate that this Court prevent the Debtor from immediately re-filing another petition and thereby obtaining the benefit of the statutory

automatic stay and imposing upon the Taylors' and the Court the expense and delay of another bankruptcy proceeding when the Debtor has already squandered one such opportunity in bad faith.

Alternatively, if the Court is not persuaded that the Debtor has acted in bad faith, the Taylors would request that the Court dismiss the Debtor's Chapter 12 proceeding with prejudice for 180-days pursuant to Section 109(g)(1) of the Bankruptcy Code. In the second alternative, the Taylors would request that the Court grant the Taylors prospective relief from the imposition of the automatic stay as to the Taylors' collateral in any bankruptcy case filed by the Debtor until the completion of the previously initiated foreclosure proceeding.

Finally, regardless of the Court's ruling on dismissal, the Taylors respectfully request the Court retain jurisdiction to determine their entitlement to reasonable fees pursuant to 11 U.S.C. § 506(b) as set forth in the Taylors' First, Second, and forthcoming Third and Final Application for Compensation.

Respectfully submitted this 16th day of December, 2013.

James M. Donohue of
Florida Bar No. 0191819
jdonohue@ausley.com
Kevin A. Forsthoefel
Florida Bar No.: 92382
kforsthoefel@ausley.com
Ausley & McMullen
123 South Calhoun St. (32301)
Post Office Box 391
Tallahassee, FL 32302
(850) 224-9115
Facsimile: (850) 222-7560

ATTORNEYS FOR TERRY & MARIE TAYLOR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically via CM/ECF system to Albert C. Penson (acp@pendd.com); Walter W. Kelley (DCannon@kelleylovett.com); Allen Turnage (service@turnagelaw.com); U. S. Trustee (USTPRegion21.TL.ECF@usdoj.gov) on this 16th day of December, 2013.

_____
Attorney